FILED ---

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

MAHMOUD M. HEGAB )
    6614 Jupiter Hill Circle )
    Apartment F )
    Alexandria, VA 22312 )
 )
    Plaintiff, )
 )
       v. )
LETITIA A. LONG, Director )
NATIONAL GEOSPATIAL-INTELLIGENCE AGENCY )
 )
    And )
 )
NATIONAL GEOSPATIAL-INTELLIGENCE AGENCY )
    7500 Geoint Drive (Fort Belvoir) )
    Springfield, VA 22150 )
 )
    Defendants. )

2011 OCT -4  A 10: 04

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

Civil No. 1:11cv1067
JCC/IDD

## COMPLAINT

## (TO SET ASIDE AGENCY ACTION DENYING PLAINTIFF A SECURITY CLEARANCE IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS)

1.    This is an action to set aside a final decision of the National Geospatial-Intelligence Agency (hereinafter referred to as (NGA) revoking Plaintiff's security clearance and access to classified information in violation of his rights and privileges under the United States Constitution.

## JURISDICTION

2.    This court had jurisdiction pursuant to 28 U.S.C. § 1331 because this matter arises under the Constitution of the United States.

**VENUE**

3.     Venue properly lies in this court pursuant to 28 U.S.C. § 1391(e)(1)and (2).   Defendant is an agency of the United States with its principal headquarters in Fairfax County, Virginia.

**WAIVER OF IMMUNITY**

4.     This action is brought against Defendant, NGA, pursuant to the government's waiver of immunity under the Administrative Procedure Act, 5 U.S.C. § 702 and § 706(2)(B), for an agency's violation of a Constitutional Right and unlawful agency action contrary to a Constitutional right, power, or privilege.

**THE FACTS**

5.     Mahmoud M. Hegab, plaintiff, is a United States citizen who was employed by defendant, NGA.

6.     Defendant, Letitia A. Long, is the Director of NGA and is sued in her official capacity

7.     Defendant, NGA, is an agency of the United States government.

8.     Plaintiff was employed by NGA on January 4, 2010 in the position of Financial/Budget Analyst.

9.     During plaintiff's employment by NGA, he held a Top Secret security clearance and Access to Sensitive Compartmented Information (SCI).   There were no problems with plaintiff's employment and his performance was well regarded by his supervisors.

2

10.   On January 4, 2010 when plaintiff began his work at NGA he informed a security officer during his orientation that he had gotten married to Bushra Nusairat, in a civil ceremony which took place in November 2009, between the time of his security clearance investigation and that date when he first he reported to work. He reported further that he and his wife had not yet begun living together because, according to their religious custom, until there was a religious ceremony they were considered betrothed, but not married. Plaintiff and Ms. Nusairat were married in a religious ceremony on October 2, 2010 after which they began living together as husband and wife and have continued to live together to present.

11.   Bushra Nusairat is an American citizen, who at the time of her marriage to plaintiff was residing in Fairfax County, Virginia, and who has continued to reside in Fairfax County Virginia with plaintiff since their marriage.

12.   By memorandum dated November 2, 2010, which plaintiff received on November 18, 2010, NGA notified plaintiff of its intent to revoke his security clearance and his access to classified information.   The proposed revocation was based in part, on his marriage to Ms. Nusarait, and in part on information previously disclosed by plaintiff as part of his security clearance investigation in 2009 which had been reviewed, discussed and cleared by NGA prior to his being hired and being granted a security clearance by NGA.

13.  Plaintiff's security clearance and access to SCI were suspended effective November 18, 2011, on his receipt on November 2, 2010 memorandum. He has not been allowed to reenter NGA facilities since that time.

14.  Also on November 18, 2010, NGA notified plaintiff by memorandum of that date, that it proposed to indefinitely place him on unpaid administrative leave based on the suspension of his security clearance and access to SCI.

15.  By memorandum dated January 6, 2011 NGA place plaintiff on indefinite unpaid administrative leave, effective January 7, 2011. Plaintiff remains in that status to present. NGA has never notified plaintiff that his employment has been terminated.

16.  The issues raised by NGA in the proposed revocation of plaintiff clearance and access concerning Ms. Nusairat were: (1) "your spouse's attendance and graduation from the Islamic Saudi Academy, whose curriculum, syllabus, and materials are influenced, funded, and controlled by the Saudi government"; and (2) "information available through open sources [which] identifies your spouse as being or having been actively involved in one or more organizations which consist of groups who are organized largely around their non-United States origin and their advocacy of or involvement in foreign political issues".

4

17.  Plaintiff thereafter requested and received from NGA the file which NGA informed him contained the information supporting its decision to revoke Plaintiff's security clearance.

18.  With respect to the issues raised concerning plaintiff, the file contained the same material which plaintiff had submitted prior to his being hired by NGA and prior to his having been granted a security clearance.

19.  With respect to the issues concerning Ms. Nusarait, the file contained: (1) reports of statements of various anti-Islamic organizations concerning the Saudi Islamic Academy; (2) a photograph "believed to be that of applicant's spouse taken at an 'anti-war occupation protest in Washington'" on the grounds of the Washington monument, carrying a sign which bore the website identification of an organization with the acronym "ANSWER", the sign stating, "War No-Act Now to Stop War and End Racism"; (3) a statement that "open source references to Bushra Nusairat indicate that following her graduation from Islamic Saudi Academy in 2005 she attended George Mason University (GMU)", and the further statement that "She reportedly attended GMU from 2005 to 2009 and her area of study was shown as 'Global Affairs, International Development, Diplomacy and Global Governance, Islamic Studies'.  She was also shown to be president of Students for Justice in Palestine at GMU."

20.  The file provided by NGA further quoted Ms. Nusairat as saying:  "SJP has a mission, like that of the USC, which is

concentrated on educating our membership, and the GMU community at large, about the ongoing Israel and Palestine conflict", and that "Our goal on this campus is to disseminate correct information about the plight of the Palestinian people and to be the voice of the under-represented."

21.   As a further basis for revoking plaintiff's clearance, the NGA file contained the statement that: "Subject told an NGA polygrapher in March, 2010 that Bushra Nusairat now works for a non-profit organization called 'Islamic Relief' which supports 'humanitarian relief efforts.'"

22.   On January 19, 2011 plaintiff responded to the proposed revocation of his clearance which included his written response and 50 exhibits of supporting evidence.

23.   With respect to the allegations against plaintiff personally, plaintiff responded with the same information he had initially provided to NGA prior to his hire.

24.   With respect to his wife, Ms. Nusairat, plaintiff responded that his wife "is a U.S. citizen residing in the U.S. who has never been accused of any illegal activity or being associated with any illegal activity."

25.   With respect to the allegation concerning his wife's attendance at the Islamic Saudi Academy, plaintiff provided evidence that his wife was enrolled by her parents in Islamic Saudi Academy because: it taught Arabic and Islamic Studies which no

other school in the D.C. area did at that time; that his wife attended Islamic Saudi Academy from the first through twelfth grades with the exception of sixth and seventh grades when her father held a teaching position abroad; that Islamic Saudi Academy encourages sports, community service, national leadership, and arts participation; that the curriculum it uses is based on the Fairfax County, Virginia curriculum for Math, Science, English, and Social Studies, and on the Saudi curriculum for Arabic and Islamic Studies; that Islamic Saudi Academy students participate in activities that allow them to interact with non-Muslims, such as Model United Nations, varsity soccer and basketball, community service programs, and Help the Homeless Walkathons; and that Islamic Saudi Academy has served as an advisor to the U.S. Army, Fort Belvoir, on Arabic language and Arabic cultural studies.

26. Plaintiff further provided evidence that the combined secular-religious curriculum of the Islamic Saudi Academy is no different than other religious schools such as, for example, the Yeshiva of Greater Washington which teaches based on a Jewish curriculum, the Blessed Sacrament School which teaches a Catholic curriculum, and Fairfax County Christian Academy which teaches in a Christian atmosphere, and that the stated goal of each of these schools is virtually identical, with the only difference being the particular religious viewpoint taught to the students.

7

27.   Further, plaintiff provided evidence with respect to the allegation concerning his wife's connection to "ANSWER", that she attended a rally in 2003 on the U.S. Capitol steps protesting the war in Iraq, a rally in which tens of thousands of Americans converged on Washington to voice their disapproval of the war, that his wife was at the time sixteen years of age, that she picked up a poster at the rally grounds that described how she felt about the Iraq war, and that she was not affiliated with the organization, ANSWER, its missions, or its objectives in any way.

28.   Plaintiff further provided evidence that at the rally one of the day's many speakers was a Democratic presidential candidate, and that a large number of veterans and military families with loved ones in Iraq also participated.

29.   With respect to NGA's concerns regarding plaintiff's wife's connection to Students for Justice in Palestine, plaintiff presented evidence that his wife, while attending George Mason University as an undergraduate between 2005 and 2009 was the president of Students for Justice in Palestine, that it was a student organization sanctioned and funded by George Mason University like other student organizations, and that the organization advocated a peaceful solution for a difficult problem, the differences between the state of Israel and the Palestinians in the West Bank.

30. With respect to NGA's concerns about his wife's employment by Islamic Relief USA, plaintiff provided evidence that his wife had held the position of Program Associate with that organization since shortly after her graduation from George Mason University, that Islamic Relief USA is a U.S. based organization founded in 1993 in California and was currently based in Alexandria, Virginia, whose mission is to alleviate suffering, hunger, illiteracy and disease worldwide, and to provide aid in a dignified and compassionate manner regardless of color, race, religion or creed.

31. Plaintiff further provided evidence that Islamic Relief USA is part of Inter-Action, the largest network of non-governmental development organizations in the USA, that it is a participating member of the Combined Federal Campaign, and that its purpose is no different than other faith-based relief organizations, such as the American Jewish Joint Distribution Committee, Catholic Charities USA, and the Latter Day Saints Charities, to name but a few.

32. In his response to the proposed revocation of his security clearance plaintiff argued that NGA's proposed action was based on rumor, innuendo and guilt by association, that it was religiously biased against Islam and violated plaintiff's and his wife's free exercise of their religion of Islam, their right to peaceably assemble to petition the government for a redress of

9

grievances, and their right to freedom of speech to express legitimate political concerns, all guaranteed by the First Amendment to the Constitution of the United States.

33. On March 4, 2011 NGA issued its decision revoking plaintiff's security clearance and access to SCI. In its decision, NGA stated that plaintiff had mitigated the concerns of his citizenship, foreign contact, overseas employment and residency, the same issues of which it had previously cleared plaintiff prior to his having been hired.

34. NGA also determined that plaintiff had satisfied its concerns about spouse's education at the Islamic Saudi Academy.

35. NGA's decision did not resolve all issues. It further continued:

> However, the information provided does not mitigate your spouse's <u>current affiliation</u> with one or more organizations which consist of groups who are organized largely around their non-United States origin and/or the advocacy of or involvement in foreign political issues. This concern elevates the potential for conflicts of interest between your obligation to protect sensitive or classified United States information and technology and your desire to help a foreign person, group, or country by providing that information. (Emphasis added).

36. Because plaintiff's wife had by then graduated from George Mason University and was no longer a member of the student organization, Students for Justice in Palestine, because evidence had been presented that she was never affiliated with "ANSWER", and because the only other group identified in NGA's file of supporting information accompanying the proposed revocation, was his wife's

10

current affiliation with her employer, Islamic Relief USA, plaintiff's counsel, on March 15, 2011 wrote to the Chief of NGA's Adjudications Branch requesting that due to the ambiguity of the decision revoking plaintiff's clearance and access, to "please advise if NGA is referring solely to Ms. Nusairat's current affiliation with Islamic Relief USA or if it is referring to some other organization or organizations not previously identified."

37. In response on March 24, 2011, NGA's Chief, Adjudications Branch replied, "NGA is not referring to organizations not previously identified."

38. Plaintiff thereafter filed a timely appeal to the NGA Personnel Security Appeals Board of the decision revoking his clearance and access, consisting of his further written response and eighty five accompanying exhibits.

39. Plaintiff presented evidence that Islamic Relief USA is a charitable organization whose purpose is to alleviate poverty and suffering wherever it is found, paying no heed to gender, race or creed; that it was incorporated in the State of California in 1993; that it was granted non-profit status as a 501(c)(3) charitable organization by the Internal Revenue Service in 1994; that it is a member of the Combined Federal Campaign, a requirement of which is not to be affiliated with any terrorist or terrorist supporting organizations; and that it sponsors an annual Iftar (end of Ramadan) dinner in Washington, which in the past has been attended

by the Director of President Obama's faith-based initiatives,
representatives from the Department of Homeland Security, the U.S.
Institute for Peace, and an Ambassador and former U.S. Senator.

40. Plaintiff further presented evidence that Islamic Relief
USA has been included in the White House Leadership Consultation
for Faith, Health, and Development; that it was announced in
President Obama's "United Who We Serve Initiative" as part of the
Interfaith Service Week; that it was recognized by President Obama
in his message to Muslims worldwide as one of the Muslim-American
organizations engaged in volunteering community-wide service; and
that it was recognized by the White House Office of Faith Based and
Neighborhood Partnerships as an example of more than thirty
organizations represented at the Consultation on Global Hunger.

41. Plaintiff further presented evidence that Islamic Relief
USA has been recognized by the Department of Defense, Department of
Homeland Security, the United States Mission to the United Nations,
the Department of State, the United States Census Bureau, USAID,
the Department of Agriculture, and the White House for its role for
many years in providing disaster relief in the United States and
throughout the world, along with other non-government
organizations.

42. Plaintiff further presented evidence that the CEO of
Islamic Relief USA, Mr. Abed Ayoub, was invited by the Department
of Agriculture and USAID to be part of the International Food, Aid,

and Development Conference, and to be part of a panel session on interfaith cooperation to feed hungry people, and was invited by USAID to be a member of the Advisory Committee on Voluntary Foreign Aid.

43.  Plaintiff further presented evidence that Islamic Relief USA has partnered with the Church of Jesus Christ of Latter Day Saints and numerous other faith-based charitable organizations to provide relief worldwide.

44.  Plaintiff further presented evidence that a number of U.S. Senators and Representatives have also recognized the importance of the work of Islamic Relief USA, including Senator John Kerry, Senator Carl Levin, Representative Elliott Engel, and Representative Maxine Waters.

45.  Plaintiff further presented evidence that Islamic Relief USA has been commended by the Governor of the State of Illinois for its commitment to providing crucial services to refugees in Illinois.

46.  Plaintiff provided further evidence that numerous agencies of the United Nations, including the United Nations Relief and Works Agency (UNRWA), United Nations Economic and Social Council (ECOSOC), International Fund for Agricultural Development (IFAD), and the United Nations Fund for Providing Relief for Children (UNICEF) all have noted and recognized Islamic Relief USA's worldwide charitable efforts.

13

47.   Plaintiff provided further evidence of recognition of the
charitable work of Islamic Relief USA by other non-governmental
organizations including the Church of Jesus Christ of the Latter
Day Saints, Catholic Relief Services, progressive Evangelical
leaders, the Jewish Council for Public Affairs, Meals on Wheels,
the Jewish World Service, Tents of Hope, Save Darfur Coalition, the
American Council for Voluntary International Relief, and Religions
for Peace, among other non-governmental organizations which have
all collaborated with Islamic Relief USA in providing charitable
relief throughout the world and which have recognized its important
role in this area.

48.   Plaintiff    provided    further    evidence    that    Charity
Navigator, the leading organization in judging the quality and
effectiveness of charitable organizations in the United States,
gives Islamic Relief USA a four star rating, its highest rating,
and that the Chronicle of Philanthropy rated Islamic Relief as
number 132 among the top 400 charities in the United States.

49.   Importantly, plaintiff provided evidence of who and what
Islamic Relief is not: that it is not listed on the Department of
Treasury's list of foreign controlled or subversive organizations
even though it has the word, Islam, in its name; that it has not
been identified by the CIA as a subversive or terrorist
organization; that it has not been subject to an IRS inquiry; that

14

it is not of interest to the FBI; and has not been the subject of Congressional hearings.

50. Plaintiff provided overwhelming evidence in great detail refuting the allegation that it is "organized largely around its non-United States origin and/or its advocacy of or involvement in foreign political issues."

51. Plaintiff argued in his appeal that NGA's security staff either did not take the time or effort to review the readily available information previously presented to it, or other open source information, or that the security staff assumed that anything with the name "Islam" associated with it is a subversive terrorist organization. Plaintiff further argued that the denial of his clearance and access because his wife is employed as Program Associate by Islamic Relief USA reflects, most generously, a failure to examine and a misunderstanding of the facts and, less generously, an anti-Islamic bias among the NGA security staff. If the latter is true plaintiff argued, its actions and conclusions would be in violation of plaintiff's and his wife's constitutionally protected rights of freedom of religion, freedom of expression, and freedom of association.

52. On July 26, 2011 plaintiff, with counsel, appeared before the NGA Personnel Security Appeals Board to orally present his appeal. At that time, plaintiff presented additional evidence to the Appeal Board that: Islamic Relief USA's CEO had been appointed

to the Advisory Committee on Voluntary Foreign Aid by the United States Agency for International Development; it had partnered with the Red Cross and other national relief organizations to provide relief to tornado victims in Alabama; and it had collaborated with the Department of Agriculture and several other faith-based organizations to provide summer food service programs at a local Maryland school.

53. Plaintiff renewed his argument that his wife's employment by Islamic Relief USA did not constitute a security risk, that the action taken was solely due to the anti-Islamic bias of NGA's security personnel, and that the revocation of Plaintiff's security clearance and access was in violation of his constitutional rights and privileges.

54. Nevertheless, plaintiff was notified by letter dated July 27, 2011 that the NGA Personnel Security Appeal Board had affirmed the decision revoking his eligibility for access to sensitive compartmented information, the only reason being given was that "the PSAB determined that your written appeal and the information provided during your personal appearance failed to mitigate security concerns related to the Adjudicative Guidelines provided in Reference D."

55. On September 7, 2011 plaintiff's counsel wrote to the Chief, NGA Personnel Security Division, requesting that if NGA possessed other information not previously provided to plaintiff

concerning Islamic Relief USA that supports its decision revoking plaintiff's security clearance because of his wife's employment by that organization that would dissuade plaintiff from filing suit, to please provide it.

56.  NGA never responded to that request for additional information and has provided no additional information.

57.  The decision of the NGA Personnel Security Appeals Board is a final agency action for which there is no other adequate remedy at law.

58.  Plaintiff has exhausted his administrative remedies.

COUNT I.

(FREEDOM OF RELIGION, FREEDOM OF SPEECH,<br>AND FREEDOM OF ASSOCIATION)

59.  Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 58 above.

60.  The revocation of plaintiff's security clearance and access to classified information by defendant was based solely on plaintiff's wife's religion, Islam, her constitutionally protected speech, and her association with, and employment by, an Islamic faith-based organization.

61.  Defendant's actions are in violation of plaintiff's right to freely associate with others regardless of their religious preference, and regardless of their protected speech, guaranteed by the First, Fifth and Ninth Amendments to the United States Constitution.

17

## COUNT II.

### (RIGHT TO PRIVACY AND FAMILIAL ASSOCIATION)

62.   Plaintiff incorporates and alleges by reference the allegations of paragraphs 1 through 58 above.

63.   The revocation of plaintiff's security clearance and access to classified information by defendant was based on solely on plaintiff's wife's religion, Islam, her constitutionally protected speech, and her association with, and employment by, an Islamic faith-based organization.

64.   Defendant's actions are in violation of plaintiff's right to privacy, his right to familial associations, and his  right to be married to whom he wishes regardless of her religious preference or religious associations, and regardless of her protected speech, which are guaranteed by the First and Ninth Amendments to the United States Constitution.

## COUNT III

### (PROPERTY INTEREST IN CONTINUED EMPLOYMENT)

65.   Plaintiff incorporates and alleges by reference the allegations of paragraphs 1 through 58 above.

66.   The revocation of plaintiff's security clearance and access to classified information by NGA was based on solely plaintiff's wife's religion, Islam, her constitutionally protected speech, and her association with, and employment by, an Islamic faith-based organization.

18

67. Plaintiff has a property interest in his continued employment in the position he previously held at NGA.

68. NGA by its actions has deprived plaintiff of his property interest in his continued employment with the federal government in violations of plaintiff's right to due process under the First, Fifth and Ninth amendments to the Unites States Constitution.

## COUNT IV.

### (LIBERTY INTEREST IN FUTURE EMPLOYMENT OPPORTUNITIES)

69. Plaintiff incorporates and alleges by reference the allegations of paragraphs 1 through 58 above.

70. The revocation of plaintiff's security clearance and access to classified information by defendant was based solely on plaintiff's wife's religion, Islam, her constitutionally protected speech, and her association with, and employment by, an Islamic faith-based organization.

71. All agencies of the government are required to give reciprocal recognition to security clearance decisions of other agencies. This includes both employees of such agencies and employees of contractors with such agencies in positions that require access to classified information.

72. Federal agencies which do not require a national security clearance as an employment requirement, but which have "Positions of Trust" dealing with sensitive, but non-national security information, also require disclosure of any denial of a security

19

clearance by a prospective applicant for employment with the government or an applicant for employment with a government contractor, for a Position of Trust.   The previous denial of a security clearance will generally cause the denial of employment in a Position of Trust.

73.   As a result of NGA's revocation of plaintiff's security clearance and access to classified information, plaintiff is, and will continue to, be denied the opportunity to be employed in any position in the federal, state, or municipal government, or any position with a contractor doing business with the federal, state or municipal government requiring a security clearance, or any position designated a Position of Trust.

74.   Defendant's actions are a denial of plaintiff's liberty interest in his unfettered opportunity for employment in violation of his rights under the First, Fifth and Ninth Amendments to the United States Constitution.

## COUNT V.

### (LIBERTY INTEREST IN REPUTATION
### AND STANDING IN THE COMMUNITY)

75.   Plaintiff incorporates and alleges by reference the allegations of paragraphs 1 through 58 above.

76.   The revocation of plaintiff's security clearance and access to classified information by NGA was based solely on plaintiff's wife's religion, Islam, her constitutionally protected

speech, and her association with, and employment by, an Islamic faith-based organization.

77.   As a result of NGA's actions, plaintiff's reputation and standing in the community as a loyal and trustworthy American citizen has been and will continue to be stigmatized and damaged until he is provided legal redress pursuant to his rights under the First, Fifth and Ninth Amendments to the United States Constitution.

### COUNT VI.
### (DISCRIMINATION IN EMPLOYMENT)

78.   Plaintiff incorporates and alleges by reference the allegations of paragraphs 1 through 58 above.

79.   The revocation of plaintiff's security clearance and access to classified information by NGA was based solely on plaintiff's wife's religion, Islam, her constitutionally protected speech, and her association with, and employment by, an Islamic faith-based organization.

80.   The actions by NGA in revoking plaintiff's security clearance and access to classified information based on plaintiff's wife's religion, Islam, her constitutionally protected speech, and her association with, and employment by, an Islamic faith-based organization was an unreasonable classification in violation of plaintiff's right to the equal protection of the law under the First, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution.

WHEREFORE, plaintiff prays: (1) that the decision of the NGA revoking plaintiff's security clearance and access be reversed; (2) that NGA be ordered to reinstate plaintiff's Top Secret security clearance and reinstate plaintiff to the position he held at the time he was terminated; (3) that plaintiff be awarded back pay and benefits from the time the Agency stopped paying him; and (4) that plaintiff be awarded his attorney's fees and costs.

**PLAINTIFF REQUESTS A TRIAL BY JURY OF ALL ISSUES SO TRIABLE.**

Sheldon I. Cohen, Attorney at Law

By: _____

Sheldon I. Cohen
Va. Bar No. 652
Counsel for Plaintiff
2009 N. 14th Street
Suite 708
Arlington, VA 22201
(703) 522-1200 Phone
(703) 522-1250 Fax
sicohen@sheldoncohen.com

heg.05s

22