IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| MAHMOUD HEGAB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:11cv01067 (JCC/IDD) |
| ) | |
| LETITIA LONG, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on a Motion to Dismiss [Dkt. 10] (the "Motion") filed by Defendants the National Geospatial-Intelligence Agency ("NGA") and its Director, Letitia Long (collectively "Defendants"). For the following reasons, the Court will grant Defendants' Motion.

**I. Background**

This case arises out of the revocation of Plaintiff Mahmoud Hegab's security clearance by his employer, NGA.

A.  Factual Background

Hegab was employed by NGA as a Financial/Budget Analyst beginning on January 4, 2010. (Compl. [Dkt. 1] ¶¶ 5, 8.) During Hegab's employment, he possessed a "Top Secret" security clearance and access to Sensitive Compartmented Information ("SCI") (collectively "security clearance"). (Compl. ¶ 9.)

1

NGA commenced a reinvestigation of Hegab's security clearance due to his marriage to Bushra Nusairat. (Compl. ¶¶ 10-11.) By memorandum dated November 2, 2010, NGA notified Hegab of its intent to revoke his security clearance based on his marriage to Nusairat as well as information previously disclosed during NGA's initial investigation. (Compl. ¶ 12.) Hegab's security clearance was suspended effective November 18, 2010. (Compl. ¶ 13.) Because of the suspension, Hegab was placed on unpaid administrative leave on January 7, 2011. (Compl. ¶ 15.) Hegab remains on unpaid administrative leave, and has not received notification that his employment has been terminated. (*Id.*)

The issues raised by NGA in its proposed revocation of Hegab's security clearance included the following: (1) Nusairat's attendance and graduation from the Islamic Saudi Academy, whose curriculum, syllabus, and materials are influenced, funded, and controlled by the Saudi government; and (2) information available through open sources which identified Nusairat's involvement with organizations consisting of groups organized largely around their non-United States origin and advocacy in foreign political issues. (Compl. ¶ 16.)

Hegab subsequently obtained a file, which NGA informed him contained the information supporting its decision to revoke his security clearance. (Compl. ¶ 17.) The information

2

relating to Hegab was the same as what he had submitted prior to being hired by NGA and receiving his security clearance. (Compl. ¶ 18.) With respect to Nusairat, the file contained: (1) statements made by various organizations concerning the Saudi Islamic Academy; (2) a photograph believed to be of Nusairat taken at an anti-war protest in Washington, D.C., in which she carried a sign bearing the website identification of an organization named "ANSWER" and stating "War No -- Act Now to Stop War and End Racism"; (3) information indicating that Nusairat attended George Mason University, that her area of study was "Global Affairs, International Development, Diplomacy and Global Governance, Islamic Studies," and that she was president of an organization known as Students for Justice in Palestine; and (4) information concerning Nusairat's employment at a non-profit organization known as "Islamic Relief." (Compl. ¶¶ 19-21.)

Hegab submitted a detailed response to NGA's proposed revocation of his security clearance, which included fifty exhibits. (*See* Compl. ¶¶ 22-31.) On March 4, 2011, NGA issued its decision revoking Hegab's security clearance. (Compl. ¶ 33.) NGA stated that Hegab had mitigated its concerns as to his citizenship, foreign contact, overseas employment, and residency -- the same issues that had been cleared prior to his initial hiring. (*Id.*) NGA also stated that Hegab had satisfied its

concerns about his wife's education at the Islamic Saudi Academy.  (Compl. ¶ 34.)  The information provided by Hegab did not, however, mitigate NGA's concerns about his wife's "current affiliation with one or more organizations which consist of groups who are organized largely around their non-United States origin and/or the advocacy of or involvement in foreign political issues."  (Compl. ¶ 35.)  NGA informed Hegab that "[t]his concern elevates the potential for conflicts of interest between your obligation to protect sensitive or classified United States information and technology and your desire to help a foreign person, group, or country by providing that information."  (*Id.*)

Hegab deduced that the organization to which NGA referred was Islamic Relief USA.[1]  (*See* Compl. ¶¶ 35-37.)  He timely appealed the revocation of his security clearance to the NGA Personnel Security Appeals Board, submitting eighty-five exhibits.  (Compl. ¶ 38.)  The exhibits generally related to Islamic Relief USA's charitable mission, its recognition by political leaders, government agencies, and non-governmental organizations, and its partnership with other charitable organizations.  (Compl. ¶¶ 39-50.)  Hegab argued that the revocation of his security clearance was based on anti-Islamic bias and violated his constitutional rights to freedom of

---

[1] At oral argument, Hegab advised the Court that Nusairat resigned from her position at Islamic Relief USA effective January 13, 2012.  Because Hegab's security clearance is presently revoked, this remains a live controversy.

4

religion, freedom of speech, and freedom of association. (Compl. ¶ 51.)

On July 26, 2011, Hegab appeared with counsel before the NGA Personnel Security Appeals Board and orally presented his appeal. (Compl. ¶ 52.) At that time, he submitted additional evidence pertaining to Islamic Relief USA and reiterated the arguments made in his previous response. (Compl. ¶¶ 52-53.) The NGA Personnel Security Appeal Board affirmed its decision revoking Hegab's security clearance by letter dated July 27, 2011. (Compl. ¶ 54.)

B. Procedural Background

Hegab filed suit on October 4, 2011. [Dkt. 1.] In the Complaint, Hegab asserts six causes of action, all of which arise under the Constitution. Hegab alleges that NGA violated (1) his First Amendment rights to freedom of religion, speech, and association (Counts I and II); (2) his rights under the Due Process Clause of the Fifth Amendment to employment and reputation (Counts III, IV, and V); and (3) his Fifth Amendment right to non-discrimination in employment (Count VI).

Defendants filed a Motion to Dismiss on December 5, 2011, arguing that the Complaint should be dismissed for lack of subject matter jurisdiction or, alternatively, for failure to state a claim. [Dkt. 10.] Hegab filed an opposition on December 14, 2011 [Dkt. 15], to which Defendants replied on

January 4, 2012 [Dkt. 23]. Defendants' Motion is before the Court.

## II. Standard of Review

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Defendants may attack subject matter jurisdiction in one of two ways. First, defendants may contend that the complaint fails to allege facts upon which subject matter jurisdiction may be based. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *King v. Riverside Reg'l Med. Ctr.*, 211 F. Supp. 2d 779, 780 (E.D. Va. 2002). In such instances, all facts alleged in the complaint are presumed to be true. *Adams*, 697 F.2d at 1219; *Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995).

Alternatively, defendants may argue that the jurisdictional facts alleged in the complaint are untrue. *Adams*, 697 F.2d at 1219; *King*, 211 F. Supp. 2d at 780. In that situation, "the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Virginia v. United States*, 926 F. Supp. at 540 (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)); *see also Velasco v. Gov't of Indonesia*, 370 F.3d 393, 398 (4th Cir. 2004) (holding that "the district

6

court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment") (citations omitted).

In either circumstance, the burden of proving subject matter jurisdiction falls on the plaintiff. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams*, 697 F.2d at 1219; *Johnson v. Portfolio Recovery Assocs.*, 682 F. Supp. 2d 560, 566 (E.D. Va. 2009) (holding that "having filed this suit and thereby seeking to invoke the jurisdiction of the Court, Plaintiff bears the burden of proving that this Court has subject matter jurisdiction").

### III. Analysis

Defendants argue that the Complaint must be dismissed for lack of subject matter jurisdiction because Hegab asks the Court to review the merits of NGA's security clearance determination -- something foreclosed by the Supreme Court's decision in *Department of Navy v. Egan*, 484 U.S. 518 (1988).[2] In *Egan*, the Supreme Court held that the Merit Systems Protection Board[3] lacked the authority to review the merits of the Navy's decision to revoke the plaintiff's security

---

[2] Defendants also argue that even assuming the Court has jurisdiction, Hegab fails to state a claim for which relief can be granted. Because the Court holds that it is without subject matter jurisdiction, it need not reach this issue.

[3] The Merits Systems Protection Board is an independent, quasi-judicial agency in the Executive Branch. *See El-Ganayni v. U.S. Dep't of Energy*, 591 F.3d 176, 181 n.3 (3d Cir. 2010).

clearance. *Id.* at 526-27. Notwithstanding the general rule that agency action is presumptively reviewable, the Supreme Court noted that the presumption has its limits, and that it "runs aground when it encounters concerns of national security." *Id*. at 527. It reasoned that the grant of security clearance to a particular employee is "a sensitive and inherently discretionary judgment call," which is "committed by law to the appropriate agency of the Executive Branch." *Id.* The Supreme Court explained that:

> The President, after all, is the 'Commander in Chief of the Army and Navy of the United States.' U.S. Const., Art. II, § 2. His authority to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position in the Executive Branch that will give that person access to such information flows primarily from this constitutional investment of power in the President and exists quite apart from any explicit congressional grant.

*Id.* The Fourth Circuit has interpreted *Egan* as a broad restriction on the subject matter jurisdiction of courts in security clearance disputes. *See Reinbold v. Evers*, 187 F.3d 348, 357-58 (4th Cir. 2005) ("[U]nder our circuit precedent, in the absence of a specific mandate from Congress providing otherwise, *Egan* deprives the federal courts of subject-matter jurisdiction to review an agency's security clearance decision"); *see also Guillot v. Garrett*, 970 F.2d 1320, 1326

8

(4th Cir. 1992) (holding that the court did not have jurisdiction to decide whether the denial of a security clearance violated the Rehabilitation Act).

Hegab cites *Webster v. Doe*, 486 U.S. 592 (1988), arguing that his claims, which allege constitutional violations, are not barred by *Egan*. *Webster* addressed whether the CIA's employment decisions under Section 102(c) of the National Security Act were judicially reviewable. *Id.* at 594. The Supreme Court held that Section 102(c) did not preclude judicial review of "colorable constitutional claims arising out of the actions of the Director pursuant to that section."[4] *Id.* at 603. The Fourth Circuit, however, has declined to extend *Webster's* holding to the *Egan* rule barring judicial review of security clearance decisions on the merits. *See Reinbold*, 187 F.3d at 358 (noting the arguable exception to *Egan* in the limited circumstance where the security clearance decision resulted in constitutional violations, but finding it unnecessary to reach

---

[4] Hegab contends that *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), and *Rasul v. Bush*, 542 U.S. 466 (2004), reaffirmed the Supreme Court's position in *Webster*. While *Hamdi* and *Rasul* are consistent with the principle that there are limits to the authority of the Executive Branch in the realm of national security, the cases involved far different circumstances from those at issue here. *Hamdi* involved the detention of a United States citizen who had been designated an "enemy combatant." *Hamdi*, 542 U.S. at 516. Other courts have rejected the argument that *Hamdi* unsettled the Supreme Court's holding in *Egan*. *See Bennett v. Chertoff*, 425 F.3d 999, 1004 (D.C. Cir. 2005) (finding *Hamdi* inapposite in security clearance dispute because "physical liberty is a fundamental right that must be accorded great weight" and it is far from clear that the Supreme Court "would strike the same balance in the context of employment termination"). *Rasul* addressed the "narrow" question whether federal courts have jurisdiction to consider habeas challenges of foreign nationals detained at the Guantanamo Bay Naval Base in Cuba, 542 U.S. at 470, and is likewise inapposite.

the issue); *Jamil v. Sec'y, Dep't of Def.*, 910 F.2d 1203, 1209 (4th Cir. 1990) (same).[5]

Judge Brinkema recently dismissed claims similar to those advanced by Hegab in *Ciralsky v. CIA*, No. 1:10cv911, 2010 WL 4724279 (E.D. Va. Nov. 15, 2010), *aff'd sub nom. Ciralsky v. Tenet*, --- F. App'x ----, 2011 WL 6367072 (4th Cir. Dec. 20, 2011) (unpublished). In that case, the plaintiff also alleged constitutional violations relating to the revocation of his security clearance.[6] *Id.* at *2. The plaintiff claimed that his security clearance was revoked because he was Jewish and was viewed as a supporter of Israel, *id.* at *1, and that the revocation violated his right to due process, his right to free

---

[5] The Third Circuit and D.C. Circuit, relying on *Webster*, have held that courts have jurisdiction to review constitutional claims arising the revocation of a security clearance. *See, e.g.*, *Stehney v. Perry*, 101 F.3d 925, 932 (3d Cir. 1996); *Nat'l Fed'n of Fed. Emps. v. Greenberg*, 983 F.2d 286, 289-90 (D.C. Cir. 1993). Both cases, however, involved challenges to *policies*, and, in any event, ultimately ruled against the plaintiffs on the merits. *See Stehney*, 101 F.3d at 935-38 (constitutional challenge to security clearance revocation based on plaintiff's refusal to take polygraph); *Greenberg*, 983 F.2d at 291-95 (constitutional challenge to standard questionnaire used in security clearance process). Indeed, at oral argument, Hegab conceded that he cannot cite a single case where a court reviewed the merits of a security clearance decision and found for the plaintiff. Moreover, the Third Circuit recently clarified its position in *El-Ganayni*, stating that "courts have jurisdiction to hear constitutional claims arising from the clearance revocation *process*, even though the *merits* of that revocation cannot be reviewed." 591 F.3d at 183 (emphases added) (internal quotation marks and citation omitted). Here, Hegab clearly seeks a review of the merits of his security clearance revocation.
[6] Hegab attempts to distinguish *Ciralsky*, noting that in that case the plaintiff asserted constitutional torts against individuals under *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), while here Hegab asserts constitutional claims directly against an agency. The Court is not persuaded that this distinction is material. Both the *Bivens* claims in *Ciralsky* and Hegab's claims here allege constitutional violations and invoke overlapping constitutional rights -- namely, the rights to free exercise, due process, and equal protection. *See Ciralsky*, 2010 WL 4724279, at *2. Hegab offers no cogent reason why Ciralsky's *Bivens* claims were barred under *Egan*, but his constitutional claims are not.

10

exercise of religion, his right to equal protection, and his right to be free from unreasonable search and seizure, *id.* at *2. Citing *Egan* and its Fourth Circuit progeny, the court held that it lacked subject matter jurisdiction to hear the plaintiff's claims. *Id.* at *2-4. Judge Brinkema stated that the "revocation of a security clearance is a *sui generis* act over which the federal courts have no jurisdiction absent congressional directive" and held that the plaintiff had failed to overcome "the clear constitutional rule set forth in *Egan*." *Id.* at *3.

Here, Hegab's claims, though framed as constitutional violations, concern the merits of NGA's decision to revoke his security clearance. (*See* Compl. ¶¶ 60, 63, 66, 70, 76, 79 (alleging that the security clearance revocation was "based solely on plaintiff's wife's religion, Islam, her constitutionally protected speech, and her association with, and employment by, an Islamic faith-based organization").) A determination of whether Hegab's security clearance was revoked due to legitimate national security concerns or, as Hegab alleges, constitutionally impermissible bases would necessarily require a review of the merits of NGA's decision. Absent clear congressional directive, which Hegab fails to identify, such a review is flatly prohibited by *Egan* and Fourth Circuit precedent.

## IV. Conclusion

For these reasons, the Court will grant Defendants' Motion to Dismiss.

An appropriate Order will issue.

|  |  |
|---|---|
| January 19, 2012<br>Alexandria, Virginia | /s/<br>James C. Cacheris<br>UNITED STATES DISTRICT COURT JUDGE |